UNITED STATES DISTRICT COURT
DISTRICT OF NEW YORK

| | |
|---|---|
| Renzer Bell | Case No.:**18 CV** |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| John Carey, Dancy Auto Group, LLC d/b/a Dancy | **JURY TRIAL DEMANDED** |
| Power Auto Group, Dancy Auto Group of Great | |
| Neck, LLC, Great Neck Auto Sales, LLC, Macky Dancy | **18 CV 2846** |
| Enterprises, LLC, Tyrone Hill, and Macky Dancy, | |
| Defendants. | |

The Plaintiff pro se Renzer Bell, ("Plaintiff"), as and for its complaint against defendants, John Carey, Dancy Auto Group, LLC d/b/a Dancy Power Auto Group, Dancy Auto Group of Great Neck, LLC, Macky Dancy Enterprises, LLC, Tyrone Hill, and Macky Dancy, respectfully pleads, and alleges as follows:

## JURISDICTION AND VENUE

1.      That this Court has jurisdiction over the subject matter of this action under 28 U.S.C. Section 1332(a), by virtue of the diversity of citizenship between the Plaintiff and the defendants.   That furthermore the matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

2. That venue is proper in the District of New York as it is predicated upon the forum selection clause found at paragraph eleven (11) of the contracts which are the subject matter of the instant action [Exhibits 14, and 16].

## PARTIES

3.      That the Plaintiff is sui juris, and a citizen of the State of Georgia. That the Plaintiff is a party to the subject contracts sought to be enforced in this action [Exhibits 14, and 16]. That at all times relevant to the issues at bar, the Plaintiff was and is a merchant as defined in the Uniform Commercial Code,

section 2-104; and actively engaged in the business of purchasing and trading a variety of valuable commodities.

4.      That upon information, and belief, the defendant Macky Dancy is a citizen of the State of New York, is sui potens in regards to the contracts sought to be enforced in this action, and in all other regards is sui juris. That upon information, and belief, the defendant Macky Dancy was and is the President, or Principal of the entities named as defendants in the instant action at all times relevant to the issues at bar, and the defendant Macky Dancy was and is a merchant as defined in the Uniform Commercial Code, section 2-104, and actively engaged as President, or Principal in the business of, inter-alia, selling high-end luxury automobiles.

5.      That upon information, and belief, the defendant Tyrone Hill is a citizen of the State of New York, is sui potens in regards to the contracts sought to be enforced in this action, and in all other regards is sui juris. That upon information, and belief, the defendant Macky Dancy was and is the President, or Principal of the entities named as defendants in the instant action at all times relevant to the issues at bar, and the defendant Macky Dancy was and is a merchant as defined in the Uniform Commercial Code, section 2-104, and actively engaged as Manager, President, or Principal in the business of, inter-alia, selling high-end luxury automobiles.

6.      That upon information, and belief, Dancy Auto Group, LLC was a limited liability company organized under the laws of the State of New York, is sui potens in regards to the contracts sought to be enforced in this action, and in all other regards is sui juris. That at all times relevant to the issues at bar, the defendant Dancy Auto Group, LLC was a merchant as defined in the Uniform Commercial Code, section 2-104; and actively engaged in the business of, inter-alia, selling high-end luxury automobiles.

7.  That upon information and belief, the defendant Dancy Auto Group, LLC was dissolved as a New York limited liability company doing business in the State of New York on, or about September 4, 2015.

8.      That upon information, and belief, Dancy Auto Group of Great Neck, LLC is a limited liability company organized under the laws of the State of New York, is sui potens in regards to the contracts sought to be enforced in this action, and in all other regards is sui juris. That at all times relevant to the

issues at bar, the defendant Dancy Auto Group of Great Neck, LLC was and is a merchant as defined in the Uniform Commercial Code, section 2-104; and actively engaged in the business of, inter-alia, selling high-end luxury automobiles.

9.      That upon information, and belief, the defendant Dancy Auto Group of Great Neck, LLC is a New York limited liability company doing business in the State of New York with a principal place of business located in Great Neck, New York.

10.     That upon information, and belief, the defendant Dancy Auto Group of Great Neck, LLC was used interchangeably with the defendant Dancy Auto Group, LLC including but not limited to having common officers, common personnel, and comingled assets, and was the recipient of fraudulently conveyed assets from other entities created by the defendants Macky Dancy, and Tyrone Hill including but not limited to Dancy Auto Group, LLC.

11.     That upon information, and belief, Macky Dancy Enterprises, LLC is a limited liability company organized under the laws of the State of New York, is sui potens in regards to the contracts sought to be enforced in this action, and in all other regards is sui juris. That at all times relevant to the issues at bar, the defendant Macky Dancy Enterprises, LLC was and is a merchant as defined in the Uniform Commercial Code, section 2-104; and actively engaged in the business of, inter-alia, selling high-end luxury automobiles.

12.     That upon information, and belief, the defendant Macky Dancy Enterprises, LLC is a New York limited liability company doing business in the State of New York with a principal place of business located in Valley Stream, New York.

13.     That upon information, and belief, the defendant Macky Dancy Enterprises, LLC was used interchangeably with the defendants Dancy Auto Group, LLC, and Dancy Auto Group of Great Neck, LLC including but not limited to having common officers, common personnel, and comingled assets, and was formed to receive the fraudulently conveyed assets of the defendants Dancy Auto Group of Great Neck, LLC, and Dancy Auto Group, LLC among other entities.

14.     That upon information, and belief, Great Neck Auto Sales, LLC is a limited liability company organized under the laws of the State of New York, is sui potens in regards to the contracts sought to be enforced in this action, and in all other regards is sui juris. That at all times relevant to the issues at bar, the defendant Macky Dancy Enterprises, LLC was and is a merchant as defined in the Uniform Commercial Code, section 2-104; and actively engaged in the business of, inter-alia, selling high-end luxury automobiles.

15.     That upon information, and belief, the defendant Great Neck Auto Sales, LLC was used interchangeably with the defendants Dancy Auto Group, LLC, Macky Dancy Enterprises, LLC, and Dancy Auto Group of Great Neck, LLC including but not limited to having common officers, common personnel, and comingled assets, and was formed to receive the fraudulently conveyed assets of the defendants Dancy Auto Group of Great Neck, LLC, and Dancy Auto Group, LLC among other entities.

16.     That the defendants Macky Dancy Enterprises, LLC, Dancy Auto Group, LLC, Great Neck Auto Sales, LLC, and Dancy Auto Group of Great Neck, LLC, will hereinafter be referred to as the "LLC Defendants".

17.     That the "LLC Defendants" were alter-egos of themselves since the limited liability company persona were not adhered to.

18.     That upon information, and belief, the "LLC Defendants" were alter-egos of Macky Dancy, and Tyrone Hill.

19.     That upon information, and belief, the "LLC Defendants" routinely acted in concert as one entity, and ignoring the limited liability company formalities.

20.     That upon information, and belief, the defendant John Carey is a citizen of the State of New York, is sui potens in regards to the contracts sought to be enforced in this action, and in all other regards is sui juris. That at all times relevant to the issues at bar, the defendant John Carey was an equity owner in the "LLC Defendants", Manager, and a merchant as defined in the Uniform Commercial Code, section 2-104; and actively engaged in the business of, inter-alia, selling high-end luxury automobiles.

21.     That the defendants Macky Dancy, Tyrone Hill, and John Carey will hereinafter be referred to as the "LLC Equity Defendants".

22.     That upon information, and belief, the "LLC Defendants", and the "LLC Equity Defendants" conspired to operate a business model that is best described as Racketeer Influenced Corrupt Organization.

23.     That upon information, and belief the defendant John Carey was the signatory to the three (3) contracts which are the subject matter of the instant action.

24.     That upon information, and belief, the defendants Macky Dancy, and Tyrone Hill were found liable in a Civil RICO action in the Eastern District of New York styled *Metro-Gem Leasing & Funding Corp. v Macky Dancy, Tyrone Hill, Dancy Auto Group,LLC, Dancy Auto Group of Great Neck, LLC et al*[2:16-CV-05245(SJF)]

## PROMISSORY ESTOPPEL

25.     That upon information, and belief, the defendant John Carey, while serving as the Manager, and equity holder in the "LLC Defendants", signed not less than three (3) contracts which are the subject matter of the instant action[Exhibits 14, and 16].

26.     That the Plaintiff prepared the aforementioned three (3) contracts to include the defendant John Carey as "buyer" in addition to the defendant Dancy Auto Group, LLC.

27.     That the defendant John Carey failed, or refused to sign the aforementioned contracts in either of his enterprise capacities[Exhibits 14, and 16].

28.     That in light of the manner in which the aforementioned contracts were signed by the defendant John Carey, the Plaintiff reasonably expected, and relied upon the personal financial backing of the "LLC Equity Defendants" in addition to the defendant Dancy Auto Group, LLC.

## THE PERVERSION OF THE CORPORATE PARAPHERNALIA BY THE "LLC EQUITY DEFENDANTS"

29.     That upon information, and belief, the fiction of the limited liability company persona of defendant Exotic Euro Cars is a privilege granted by the State of New York.

30.     That upon information, and belief, the "LLC Equity Defendants" employed the registered agent for defendant Dancy Auto Group of Great Neck, LLC, Juanita Hill as an active participant, and actor in automobile transactions.

31.     That upon information, and belief, the "LLC Defendants failed, or refused to hold either periodic company meetings, or annual company meetings.

32.     That upon information, and belief, the "LLC Equity Defendants" failed, or refused to employ Certified Public Accountants to conduct annual compilations of its financial records.

33.     That upon information, and belief, the "LLC Equity Defendants" failed, or refused to employ Certified Public Accountants to conduct annual reviews of its financial records.

34.     That upon information, and belief, the "LLC Equity Defendants" failed, or refused to employ Certified Public Accountants to conduct annual audits of its financial records.

35.     That upon information, and belief, the "LLC Equity Defendants" failed, or refused to record minutes of either periodic company meetings, or annual company meetings.

36.     That upon information, and belief, the "LLC Equity Defendants" exercised complete control, and dominion over the "LLC Defendants".

37.     That upon information, and belief, the "LLC Defendants" did not elect company officers.

38.     That upon information, and belief, the "LLC Defendants" did not maintain separate company offices.

39.     That upon information, and belief, the "LLC Defendants" did not make periodic, recorded dividend payments, or disbursements to the "LLC Equity Defendants".

40.     That upon information, and belief, the "LLC Equity Defendants" utilized the assets including but not limited cash balances of the "LLC Defendants" for their personal benefit.

41.     That upon information, and belief, the "LLC Equity Defendants" utilized the "LLC Defendants" as artifices to defraud, and willfully, and maliciously caused economic injury to Metro-Gem Leasing & Funding Corp., and other trade counterparts.

42.    That upon information, and belief, the "LLC Equity Defendants" fraudulently conveyed the assets of the "LLC Defendants" to themselves, or their confederates without giving adequate consideration to the "LLC Defendants" in exchange for those assets.

43.    That upon information, and belief, the "LLC Equity Defendants" used the "LLC Defendants" to sell motor vehicles without delivering the title to the purchaser.

44.    That upon information, and belief, the "LLC Defendants" are financially insolvent.

45.    That upon information, and belief, the "LLC Equity Defendants" fraudulently conveyed assets among themselves while failing, or refusing to provide adequate consideration in exchange for those assets.

46.    That upon information, and belief, the defendant Macky Dancy Enterprises, LLC was formed when the "LLC Equity Defendants" encountered the commercial disputes with the Plaintiff which are the subject matter of the instant action.

47.    That upon information, and belief, the "LLC Defendants" failed, or refused to prepare financial statements during all times relevant to the issues at bar.

48.    That upon information, and belief, the "LLC Defendants" failed, or refused to create, and maintain financial records during all times relevant to the issues at bar.

49.    That upon information, and belief, the "LLC Equity Defendants" failed, or refused to capitalize the "LLC Defendants".

50.    That upon information, and belief, the "LLC Defendants" severely undercapitalized during all times relevant to the issues at bar.

51.    That when faced with the prospect of honoring their contractual obligations to the Plaintiff, the "LLC Equity Defendants" willfully, maliciously, and fraudulently conveyed the assets of the "LLC Defendants" to themselves for their personal benefit causing injury to the Plaintiff to the extent that the "LLC Defendants" have insufficient assets to pay the Plaintiff for the damages which resulted from multiple breaches of contract.

52.     That upon information, and belief, the facts are such that an adherence to the fiction of the separate existence of the limited liability company persona of the "LLC Defendants" would, under the circumstances described in the aforementioned paragraphs, sanction a fraud, and promote injustice.

## THE NATURE OF THE CASE

53.     That this is an action brought by the Plaintiff/Seller of a movable good against the defendants/Buyers for anticipatory repudiation of contract(s) and/or breach of contract(s). That the subject vehicles are movable goods pursuant to Article Two (2) of the Uniform Commercial Code thereby subjecting the transactions to the provisions and rules set forth under Article Two (2) of the Uniform Commercial Code.

54. That the Plaintiff, and the defendants consummated at least one (1) commercial transaction involving a Range Rover automobile prior to entering into the contracts which are the subject matter of the instant action.

55. That the buyers, and the seller in the previously consummated transaction were the same as the buyers, and the seller identified in the contracts which are the subject matter of the instant action.

56. That the buyers/defendants paid the consideration due the Plaintiff after the Plaintiff tendered the requisite buyer's order/purchase agreement/bill of sale/contract to the buyers/defendants.

57. That the contract signed by the authorized signatory for the buyer/defendants, and the Plaintiff in the consummated transaction was essentially identical to the three (3) contracts which are the subject matter of the instant action.

58.     That the Plaintiff, and defendants established a course of dealing in the previous transaction that the Plaintiff reasonably expected would be followed in the transactions at bar.

59.     That the course of dealing established between the Plaintiff, and the defendants featured the defendant John Carey as the signatory to the agreements on behalf of the other defendants.

60.     That the course of dealing established between the Plaintiff, and the defendants featured the defendant John Carey as the sole negotiator of the terms of the several agreements with the Plaintiff.

61.    That the common usage of trade in the high-line car industry is that the franchise car dealer will rarely if ever sell the <u>new</u> subject automobile to either another franchise car dealer, or to a pre-owned, non-franchise car dealer due to either contractual prohibitions agreed to with the distributor, or manufacturer, or sanctions from the distributor, or manufacturer that would have adverse economic impact on the franchise car dealer.

62.    That another common usage of trade in the high-line car industry is that the franchise car dealer will require a good faith deposit to secure the right to place an order for a vehicle, or to hold a vehicle until the transaction is consummated.

63.    That in, or around March 2014 franchise Land Rover dealers required good faith deposits of not less than $5,000.00, and frequently as much as $30,000.00 due to the limited production, and high demand for the 2014 Range Rover Autobiography Long Wheel Base vehicle, and the Plaintiff complied with the common usage of trade by tendering good faith deposits to secure the right to purchase 2014 Range Rover Autobiography Long Wheel Base vehicles.

64.    That in light of the aforementioned common usage of trade, the course of dealing established between the Plaintiff an the defendants required the defendants to nominate their preferred agent to act as the purported lessor for either the Plaintiff, or the Plaintiff's agent in order to avoid disturbing the concerns, or sensibilities of the franchise car dealer.

65.    That the Plaintiff never entered into a lease agreement with either the defendants, or the defendants' respective agents given that the submission of the Plaintiff's, or the Plaintiff's agent's lessor to the car dealer was merely cosmetic, designed to placate the common usage of trade in the high-line car industry.

66.    That by way of the course of dealing between the Plaintiff, and the defendants, and the plain language of the contracts, the consideration required from the Plaintiff pursuant to the contracts, and course of dealing is the production of a buyer's order/purchase agreement/bill of sale/contract from the car dealer that names either the defendants, or their agent as the purchaser of the subject automobile conforming to the description of the automobile in the contracts.

67.     That upon receipt of the contract of sale produced by the car dealer by the defendants, the defendants have seventy-two (72) hours to pay the Plaintiff the consideration due pursuant to the contracts.

68.     That in the event the defendants elect not to complete the purchase of the subject automobile from the car dealer, the consideration envisioned by the contracts is due to be paid to the Plaintiff as described in the contracts.

69.     That in, or around November 2013 the parties entered into a contractual agreement (the First Agreement).

70.     That the basic terms set forth under the First Agreement were a quantity of one (1) 2014 Range Rover Autobiography Long Wheel Base at the transaction price of MSRP, $141,000.00 to $145,000.00 depending on vehicle options, plus $30,080.00, and that delivery would be completed after tendering payment in full to the car dealer by the defendants as per the arrangements made with the car dealer.

71.     That the Agreement further provided, "Buyer agrees to pay the sales price of <u>MSRP + $25,500.00</u> to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point".

72.     That the Agreement further provided, ""Buyer agrees to remit to Seller, or its agents, or assigns, within seventy-two (72) hours of receipt by the Buyer, or its agents, or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$4,580.00** plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of execution of this Agreement. Buyer agrees to remit within seventy two (72) hours to the car dealer the equivalent of ten (10) percent of the purchase price of the Vehicle described in paragraph 1 upon car dealer's request for specification of the color, options and equipment of said Vehicle".

73.    That the Agreement at paragraph further required, "Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of <u>MSRP + $25,500.00</u> plus any applicable luxury tax, registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2.

74.    That the Agreement at paragraph six (6) provided, "The Seller may within thirty (30) days of its tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in specification as the automobile specification in the instant transaction.

   a)  The second automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.

   b)  The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's order/purchase agreement/bill of sale/contract** tendered by the Seller.

   c)  The second automobile transaction <u>does not</u> require the signing of an additional contract by the Seller, or Buyer identified herein."

75.    That the Agreement additionally required, "Buyer agrees and warrants that it and/or its agents or assigns will not under any circumstances contact or communicate with the car dealer of the Vehicle described in the above paragraph 1 unless Buyer receives specific written authorization from the Seller. Buyer further agrees and warrants that the terms and conditions of this agreement are confidential and that it will not, under any circumstances, disclose the terms and conditions of this agreement to any person and/or any entity unless Buyer receives specific written authorization from the Seller".

76.    That the Agreement further established, "In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the

Buyer is required to make a payment to the Seller of Seventy-Five Thousand, Eight Hundred Eighty-Eight Dollars as partial liquidated damages, to include but not limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned liquidated damages payment to the Seller does not represent a penalty".

77.     That the Agreement further established, "This Agreement shall be governed by and construed under the laws of the State of New York, except for its conflict of laws principles. Buyer consents and agrees that all legal proceedings, including but not limited to oral depositions, relating to the subject matter of this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and Buyer consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts".

78.     That the Agreement further established, "The Buyer unconditionally waives by signing this contract its right, if any, to contest the enforceability of the liquidated damages clause as an affirmative defense, or otherwise refuse to pay the agreed liquidated damages amount contained herein.

79.     That in, or around December 2013 the car dealer provided the Plaintiff, and the defendants with the buyer's order/purchase agreement/bill of sale/contract naming the defendants' agent, Metro-Gem Leasing & Funding Corp., as the purchaser as per the instructions provided by the defendants, and consistent with course of dealing established by the previous transaction between the parties.

80.     That the Plaintiff, and the defendants established a pattern, and practice through their aforementioned course of dealing of using Metro-Gem Leasing & Funding Corp. to facilitate the acquisition of motor vehicles by the defendants pursuant to contracts entered into by the Plaintiff, and the defendants.

81.     That the Plaintiff notified the defendants that the car dealer had produced the aforementioned **buyer's order/purchase agreement/bill of sale/contract** by faxing, and emailing same to the defendants in, or around December 2013.

82.    That the Plaintiff notified the defendants of his Notice Of Intention To tender a second **buyer's order/purchase agreement/bill of sale/contract** pursuant to paragraph six (6) of the First Agreement [Exhibit 13].

83.    That the defendants failed, or refused to respond to the Plaintiff's aforementioned Notice of Intention To Tender.

84.    That the Plaintiff should have been paid $30,080.00 as its consideration pursuant to the First Agreement in, or around April 2014.

85.    That the defendants failed, or refused to pay the Plaintiff for the second tender of the **buyer's order/purchase agreement/bill of sale/contract**.

86.    That on or around the 25th of March, 2014 the parties entered into a contractual agreement (the "Second Agreement") when the Plaintiff, and the defendants signed the contract annexed hereto as Exhibit 14.

87.    That the basic terms set forth under the First Agreement were a quantity of one (1) 2014 Range Rover Autobiography Long Wheel Base at the transaction price of MSRP, $141,000.00 to $145,000.00 depending on vehicle options, plus $60,080.00, and that delivery would be completed after tendering payment in full to the car dealer by the defendants as per the arrangements made with the car dealer.

88.    That the Agreement further provided, "Buyer agrees to pay the sales price of <u>MSRP + $55,500.00</u> to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point" [Exhibit 14, paragraph four (4)].

89.    That the Agreement further provided, ""Buyer agrees to remit to Seller, or its agents, or assigns, within seventy-two (72) hours of receipt by the Buyer, or its agents, or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$4,580.00** plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the

Vehicle described in paragraph 1 above within seventy-two (72) hours of execution of this Agreement. Buyer agrees to remit within seventy two (72) hours to the car dealer the equivalent of ten (10) percent of the purchase price of the Vehicle described in paragraph 1 upon car dealer's request for specification of the color, options and equipment of said Vehicle." [Exhibit 14, paragraph two (2)].

90.    That the Agreement at paragraph further required, "Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of MSRP + $55,500.00 plus any applicable luxury tax, registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2.[Exhibit 14, paragraph five (5)]

91.    That the Agreement at paragraph six (6) provided, "The Seller may within thirty (30) days of its tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in specification as the automobile specification in the instant transaction.

a)    The second automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.

b)    The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's order/purchase agreement/bill of sale/contract** tendered by the Seller.

c)    The second automobile transaction does not require the signing of an additional contract by the Seller, or Buyer identified herein."[Exhibit 14, paragraph six (6)]

92.    That the Agreement additionally required, "Buyer agrees and warrants that it and/or its agents or assigns will not under any circumstances contact or communicate with the car dealer of the Vehicle described in the above paragraph 1 unless Buyer receives specific written authorization from the Seller. Buyer further agrees and warrants that the terms and conditions of this agreement are confidential and

that it will not, under any circumstances, disclose the terms and conditions of this agreement to any person and/or any entity unless Buyer receives specific written authorization from the Seller" [Exhibit 14, paragraph 3].

93.    That the Agreement further established, "In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the Buyer is required to make a payment to the Seller of Seventy-Six Thousand, Eight Hundred Eighty-Eight Dollars as partial liquidated damages, to include but not limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned liquidated damages payment to the Seller does not represent a penalty" [Exhibit 14, paragraph nine (9)].

94.    That the Agreement further established, "This Agreement shall be governed by and construed under the laws of the State of New York, except for its conflict of laws principles. Buyer consents and agrees that all legal proceedings, including but not limited to oral depositions, relating to the subject matter of this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and Buyer consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts" [Exhibit 14, paragraph eleven (11)].

95.    That the Agreement further established, "The Buyer unconditionally waives by signing this contract its right, if any, to contest the enforceability of the liquidated damages clause as an affirmative defense, or otherwise refuse to pay the agreed liquidated damages amount contained herein" [Exhibit 14, paragraph fourteen (14)].

96.    That on or around March 27, 2014 the car dealer provided the Plaintiff, and the defendants with the buyer's order/purchase agreement/bill of sale/contract [Exhibit 15] naming the defendants' agent, Metro-Gem Leasing & Funding Corp., as the purchaser as per the instructions provided by the defendants, and consistent with course of dealing established by the previous transaction between the parties.

97.     That the Plaintiff, and the defendants established a pattern, and practice through their aforementioned course of dealing of using Metro-Gem Leasing & Funding Corp. to facilitate the acquisition of motor vehicles by the defendants pursuant to contracts entered into by the Plaintiff, and the defendants.

98.   That the Plaintiff notified the defendants that the car dealer had produced the aforementioned **buyer's order/purchase agreement/bill of sale/contract** by faxing, and emailing same to the defendants on or around March 27, 2014.

99.     That the Plaintiff informed the defendants on or around March 27, 2014, and again on or around March 28, 2014 that the subject motor vehicle was ready to be picked-up by the defendants upon completion of making payment in full.

100.    That the subject motor vehicle identified to the first contract should have been paid for on or before March 31, 2014 [Exhibit 14, paragraph four (4)].

101.    That the Plaintiff should have been paid $60,080.00 as its consideration pursuant to the First Agreement on or before April 1, 2014.

102.    That on or around the 26th of March, 2014 the parties entered into an identical, second contractual agreement (the "Third Agreement") when the Plaintiff, and the defendants signed the contract annexed hereto as Exhibit 16.

103.    That the basic terms set forth under the Second Agreement were a quantity of one (1) 2014 Range Rover Autobiography Long Wheel Base at the transaction price of MSRP, $141,000.00 to $145,000.00 depending on vehicle options, plus $60,080.00, and that delivery would be completed after tendering payment in full to the car dealer by the defendants as per the arrangements made with the car dealer.

104.     That the Agreement further provided, "Buyer agrees to pay the sales price of <u>MSRP + $55,500.00</u> to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for

pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point" [Exhibit 16, paragraph four (4)].

105.     That the Agreement further provided, ""Buyer agrees to remit to Seller, or its agents, or assigns, within seventy-two (72) hours of receipt by the Buyer, or its agents, or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$4,580.00** plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of execution of this Agreement. Buyer agrees to remit within seventy two (72) hours to the car dealer the equivalent of ten (10) percent of the purchase price of the Vehicle described in paragraph 1 upon car dealer's request for specification of the color, options and equipment of said Vehicle." [Exhibit 16, paragraph two (2)].

106.     That the Agreement at paragraph further required, "Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of MSRP + $55,500.00 plus any applicable luxury tax, registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2.[Exhibit 16, paragraph five (5)]

107.     That the Agreement at paragraph six (6) provided, "The Seller may within thirty (30) days of its tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in specification as the automobile specification in the instant transaction.

a)     The second automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.

b)     The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's**

**order/purchase agreement/bill of sale/contract** tendered by the Seller.

c)    The second automobile transaction <u>does not</u> require the signing of an additional contract by the Seller, or Buyer identified herein."[Exhibit 16, paragraph six (6)]

108.    That the Agreement additionally required, "Buyer agrees and warrants that it and/or its agents or assigns will not under any circumstances contact or communicate with the car dealer of the Vehicle described in the above paragraph 1 unless Buyer receives specific written authorization from the Seller. Buyer further agrees and warrants that the terms and conditions of this agreement are confidential and that it will not, under any circumstances, disclose the terms and conditions of this agreement to any person and/or any entity unless Buyer receives specific written authorization from the Seller" [Exhibit 16, paragraph 3].

109.    That the Agreement further established, "In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the Buyer is required to make a payment to the Seller of Seventy-Six Thousand, Eight Hundred Eighty-Eight Dollars as partial liquidated damages, to include but not limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned liquidated damages payment to the Seller does not represent a penalty" [Exhibit 16, paragraph nine (9)].

110.    That the Agreement further established, "This Agreement shall be governed by and construed under the laws of the State of New York, except for its conflict of laws principles. Buyer consents and agrees that all legal proceedings, including but not limited to oral depositions, relating to the subject matter of this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and Buyer consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts"[Exhibit 14, paragraph eleven (11)].

111.    That the Agreement further established, "The Buyer unconditionally waives by signing this contract its right, if any, to contest the enforceability of the liquidated damages clause as an affirmative

defense, or otherwise refuse to pay the agreed liquidated damages amount contained herein"[Exhibit 16, paragraph fourteen (14)].

112. That on or around March 29, 2014, the Plaintiff received an email from the defendant John Carey stating that the defendants' buyer(s) were looking to rescind/repudiate their agreement(s) with the defendants [Exhibit 17].

112. That on or around March 31, 2014, the Plaintiff sent the defendants a letter seeking reasonable assurances of performance [Exhibit 18].

113. That on or around March 31, 2014, the defendants informed the Plaintiff that they would not honor their contractual obligations under either contract.

114. That the Plaintiff executed the course of performance expected by the defendants, required by the two (2) aforementioned agreements, and consistent with the course of dealing established by the first commercial transaction identified by paragraphs nineteen (19) through thirty-three (33) above.

115. That as a direct result of the defendants' failure/refusal to honor their contractual obligations to the Plaintiff, the Plaintiff has been damaged monetarily as set forth in more detail below.

## AS AND FOR THE FIRST CAUSE OF ACTION

## BREACH OF CONTRACT, OR ANTICIPATORY REPUDIATION OF CONTRACT

116. That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if more fully set forth herein.

117. That the Plaintiff timely noticed the defendants of his intention to tender the second **buyer's order/purchase agreement/bill of sale/contract** as provided in paragraph six (6) of the First Agreement.

118. That the defendants were dilatory by failing, or refusing to respond to the Plaintiff's Notice Of Intention To Tender.

119. That the Plaintiff sent the defendants a letter via email, facsimile, and First Class Mail seeking reasonable assurances of performance from which the Plaintiff did not receive a response.

120. That the defendants' failure, or refusal to honor the Notice Of Intention To Tender sent by the Plaintiff pursuant to the First Agreement represents a material breach of the First Agreement.

121.    That despite the Plaintiff seeking reasonable assurance of performance from the defendants pursuant to UCC 2-609, the defendants have failed, or refused to honor their contractual obligations pursuant to the First Agreement.

122.    That the Plaintiff moved to seek to cover, and mitigate its damages when it became clear that the defendants did not intend to honor their contractual obligations under the First Agreement.

123.    That as a reasonable result of the defendants' material breach of the First Agreement, the Plaintiff is entitled to liquidated damages in the amount of $75,588.00.

## AS AND FOR THE SECOND CAUSE OF ACTION

## BREACH OF CONTRACT, OR ANTICIPATORY REPUDIATION OF CONTRACT

124.    That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if more fully set forth herein.

125.    That the Plaintiff tendered the performance required pursuant to the First Agreement however the defendants failed to pay the car dealer for the subject motor vehicle.

126.    That the First Agreement required the defendants to remit the amounts due the car dealer within two (2) business days of receipt of notification from the car dealer that the subject automobile was available for pick-up.

127.    That the First Agreement required that the defendants pay the Plaintiff the consideration due the Plaintiff within seventy-two (72) hours of the receipt of the *buyer's order/purchase agreement/bill of sale/contract* from the car dealer or the Plaintiff/Seller.

128.    That the defendants failed/refused to pay the Plaintiff the consideration due pursuant to the requirements of the First Agreement.

129.    That the car dealer provided the defendants with notice that the subject automobile was available for pick-up on or around March 27, 2014.

130.    That the defendants' failure/refusal to pay the Plaintiff the consideration due the Plaintiff pursuant to the First Agreement represents a material breach of the First Agreement.

131.    That despite the Plaintiff seeking reasonable assurance of performance from the defendants pursuant to UCC 2-609, the defendants have failed/refused to honor their contractual obligations pursuant to the First Agreement.

132.    That the Plaintiff moved to seek to cover, and mitigate its damages when it became clear that the defendants did not intend to honor their contractual obligations under the First Agreement.

133.    That as a reasonable result of the defendants' material breach(es) of the First Agreement, the Plaintiff is entitled to liquidated damages in the amount of $76,888.00.

## AS AND FOR THE THIRD CAUSE OF ACTION

## BREACH OF CONTRACT, OR ANTICIPATORY REPUDIATION OF CONTRACT

134.    That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if more fully set forth herein.

135.    That the Plaintiff was ready, willing, and able to perform its contractual obligations pursuant to the Second Agreement.

136.    That the defendants, via the defendant John Carey, informed the Plaintiff on March 29, 2014, and again on March 31, 2014 that they were unwilling to pay the total price including consideration due the Plaintiff that was agreed to by the Plaintiff, and the defendants in the Second Agreement [Exhibit 17].

137.    That the defendants' refusal to pay the total price including consideration due the Plaintiff that was agreed to by the Plaintiff, and the defendants in the Second Agreement represents a material breach of the Second Agreement [Exhibit 17].

138.    That despite the Plaintiff seeking reasonable assurance of performance from the defendants pursuant to UCC 2-609, the defendants have refused to honor their contractual obligations pursuant to the Second Agreement.

139.    That the Plaintiff moved to seek to cover, and mitigate its damages when it became clear that the defendants did not intend to honor their contractual obligations under the Second Agreement.

140.     That as a reasonable result of the defendants' material breach/repudiation of the Second Agreement, the Plaintiff is entitled to liquidated damages in the amount of $76,888.00.

## AS AND FOR THE FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT, OR ANTICIPATORY REPUDIATION OF CONTRACT

141.     That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if more fully set forth herein.

142.     That the First Agreement provides that, "The Seller may within thirty (30) days of its tender to the Buyer of the buyer's order/purchase agreement/bill of sale/contract as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the buyer's order/purchase agreement/bill of sale/contract for a second automobile similar in specification as the automobile specification in the instant transaction.

a)     The second automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.

b)     The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's order/purchase agreement/bill of sale/contract** tendered by the Seller.

c)     The second automobile transaction does not require the signing of an additional contract by the Seller, or Buyer identified herein [Exhibit 14, paragraph six (6)]".

143.     That the Plaintiff timely noticed the defendants of its intention to exercise its option to tender the second **buyer's order/purchase agreement/bill of sale/contract** to the defendants for an additional Range Rover Autobiography Long Wheel Base pursuant to paragraph six (6) of the First Agreement [Exhibit 19, sub-exhibit A].

144.     That the defendants failed, or refused to accept the tender of the second **buyer's order/purchase agreement/bill of sale/contract** for the second motor vehicle as provided under the First Agreement [Exhibit 14].

145.    That the defendants' failure, or refusal to accept the tender of the second **buyer's order/purchase agreement/bill of sale/contract** for the second motor vehicle as provided under the First Agreement represented anticipatory repudiation, or material breach of the First Agreement.

146.    That after the defendants' failed, or refused to accept the tender of the second **buyer's order/purchase agreement/bill of sale/contract**, the Plaintiff successfully covered the defendants' breach, or repudiation by tendering a **buyer's order/purchase agreement/bill of sale/contract** to L.O.R. Enterprises, LLC, and Michael Pinney.

147.    That L.O.R. Enterprises, LLC, and Michael Pinney regularly conducted commercial transactions with the Plaintiff as early as seven (7) years prior to the transactions which are the subject matter of the instant action.

148.    That as a reasonable result of the defendants' breach, or anticipatory repudiation of paragraph six (6) of the First Agreement, the Plaintiff is entitled to compensatory damages pursuant to the Uniform Commercial Code at 2-708(2) as Lost Volume Seller in the amount of $120,160.00.

## LIQUIDATED DAMAGES

149.    That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if more fully set forth herein.

150.    That the defendant John Carey negotiated the terms of the subject contracts, including but not limited to the liquidated damages clauses, with the Plaintiff on behalf of the other defendants.

151.    That the Plaintiff, and the defendants, via the defendant John Carey, agreed to the liquidated damages amount pled in the first, and second causes of action after arms length negotiation.

152.    That the liquidated damages amount agreed to by the parties represents an estimate, prior to signing the respective contracts, of the monetary damage the Plaintiff would reasonably experience in the event of anticipatory repudiation of contract, or breach of contract by the defendants.

153.    That the defendants/Buyers waived their right to contest the enforceability of the liquidated damages clause(s) in paragraph fourteen (14) of the respective contracts.

WHEREFORE, the Plaintiff demands judgment against the defendants with interest from April 30, 2014, together with costs and disbursements of this action.

First Cause of Action – Breach of Contract, or Anticipatory Repudiation of Contract

    a.   Liquidated Damages -  $75,588.00

Second Cause of Action – Breach of Contract, or Anticipatory Repudiation of Contract

    a.   Liquidated Damages -  $76,888.00

Third Cause of Action – Breach of Contract, or Anticipatory Repudiation of Contract

    a.   Liquidated Damages -  $76,888.00

Third Cause of Action-Breach of Contract, or Anticipatory Repudiation of Contract

    a.   Compensatory Damages Pursuant To UCC 2-708(2) -   $120,160.00

    b.   Consequential Damages –    $16,575.00

    c.   Incidental Damages -    $4,575.00

Dated: April 30, 2014
Lawrenceville, Georgia 30045

By: _____
      Renzer Bell
      C / O  Rodney Finkley
      1957 Shaker Falls Lane
      Lawrenceville, Georgia 30045

To Defendants:
Mackie Dancy
75 Brentwood Lane
Valley Stream, New York 11581
(516)864-0000

Dancy Auto Group, LLC
760 Jericho Turnpike
Woodbury, New York 11797
(516)864-0000

Macky Dancy Enterprises, LLC
760 Jericho Turnpike
Woodbury, New York 11797
(516)864-0000

John Carey
760 Jericho Turnpike
Woodbury, New York 11797
(914)309-0480

Dancy Auto Group of Great Neck, LLC
760 Jericho Turnpike
Woodbury, New York 11797
(516)864-0000

Tyrone Hill
72 Ridge Drive
Westbury, New York 11590

Great Neck Auto Sales, LLC
760 Jericho Turnpike
Woodbury, New York 11797
(516)864-0000

# EXHIBIT 13

January 14, 2014

John Carey
Manager
Dancy Auto Group, LLC
760 Jericho Turnpike
Woodbury, New York 11797

<u>Via Facsimile, and First Class Mail</u>

Dear Mr. Carey,

You are hereby noticed that the undersigned has elected to exercise its option pursuant to the contract to tender to you the buyer's order/purchase agreement/bill of sale/contract for a second 2014 Range Rover HSE.

The agreed price for the second 2014 Range Rover HSE is MSRP plus $30,080.00.

The subject 2014 Range Rover HSE is white exterior over black interior with 21" wheels, and panoramic roof.

Thank you for your attention, and consideration.

Sincerely,

Renzer Bell
(904)768-7350
(904)766-7312

Encl.

February 7, 2014

John Carey
Manager
Dancy Auto Group, LLC
760 Jericho Turnpike
Woodbury, New York 11797

<u>Via Email, Facsimile, and First Class Mail</u>

Dear Mr. Carey,

***Time is of the essence!***

At this time it is imperative that you provide reasonable assurance of performance given that you sent us an email indicating that you "were no longer interested".

Please note that we have a contract with you, and that we are able, ready, and willing to perform our contractual obligations.

The undersigned hereby requests written confirmation that you will honor your contractual obligations to the undersigned, or that you will not honor your contractual obligations to the undersigned in clear, unequivocal language.

Given the divergence of your last several communications with the undersigned, the undersigned hereby invokes the Uniform Commercial Code at Article 2-609.

***Time is of the essence!***

Thank you for your attention, and consideration.

Sincerely,

Renzer Bell
(904)768-7350
(904)766-7312

Encl.

# EXHIBIT 14

# ASSIGNMENT OF CONTRACT OF SALE - MOTOR VEHICLE

1. For the consideration of $4,580.00 plus other good and valuable consideration, RENZER BELL (the "Seller"), does hereby sell, assign and transfer to DANCY AUTO GROUP, LLC, AND JOHN CAREY (the "Buyer"), whose address is 760 Jericho Turnpike, Woodbury, New York 11797, its right to purchase the following described motor vehicle (the "Vehicle") :

Make: _____ LAND ROVER _____
Model: ___ RANGE LOVER AUTOBIOGRAPHY LWB ___
Year: 2014
VIN [to be provided by the car dealer]

2. Buyer agrees to remit to Seller, or its agents or assigns, within seventy-two (72) hours of receipt by the Buyer, or its agents or assigns, of the buyer's order/purchase agreement/bill of sale/contract from the Seller or car dealer, of said Vehicle the above mentioned $4,580.00 plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed in paragraph 1 above within seventy-two (72) hours to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of execution of this Agreement. Buyer agrees to remit within seventy-two (72) hours to the car dealer the equivalent of ten (10) percent of the purchase price of the Vehicle described in paragraph 1 upon car dealer's request for specification of the color, options and equipment of said Vehicle.

3. Buyer agrees and warrants that it and/or its agents or assigns will not under any circumstances contact or communicate with the car dealer of the Vehicle described in the above paragraph 1 unless Buyer receives specific written authorization from the Seller. Buyer further agrees and warrants that the terms and conditions of this agreement are confidential and that it will not, under any circumstances, disclose the terms and conditions of this agreement to any person and/or any entity unless Buyer receives specific written authorization from the Seller.

4. Buyer agrees to pay the sales price of MSRP + $55,500.00 to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point.

5. Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of MSRP + $55,500.00 plus any applicable luxury tax, registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2.

6. The Seller may within thirty (30) days of its tender to the Buyer of the buyer's order/purchase agreement/bill of sale/contract as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the buyer's order/purchase agreement/bill of sale/contract for a second automobile similar in specification as the first automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.
b) The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the buyer's order/purchase agreement/bill of sale/contract tendered by the Seller.
c) The second automobile transaction does not require the signing of an additional contract by the Seller, or Buyer identified herein.

7. Buyer will not hold Seller liable for any damages or breach of this agreement if the car dealer is unwilling or unable to deliver the Vehicle referred to in paragraph 1, and/or if the car dealer breaches its agreement with the Seller, and/or for any acts of the car dealer and/or third parties.

a) In the event the Buyer does not comply with the terms and conditions set forth in the above paragraph 4, Buyer agrees and warrants that any and all sanctions and/or charges levied by the car dealer because of said noncompliance shall be borne by the Buyer.

8. The Vehicle is being transferred to Buyer on an "AS IS" basis, with no warranties, express or implied, by Seller, as to the condition of the Vehicle.

9. In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the Buyer is required to make a payment to the Seller of Seventy-Six Thousand, Eight Hundred Eighty-Eight Dollars as partial liquidated damages, to include but not limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned liquidated damages payment to the Seller does not represent a penalty.

10. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

11. This Agreement shall be governed by and construed under the laws of the State of New York, except for its conflict of laws principles. Buyer consents and agrees that all legal proceedings, including but not limited to oral depositions, relating to the subject matter of this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and Buyer consents and agrees that jurisdiction and venue for such proceedings shall be exclusively with such courts.

12. This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written.

13. The undersigned parties acknowledge, accept and will unconditionally abide by all of the terms and conditions of this Agreement.

14. The Buyer unconditionally waives by signing this contract its right, if any, to contest the enforceability of the liquidated damages clause as an affirmative defense, or otherwise refuse to pay the agreed liquidated damages amount contained herein.

15. The Buyer, and Seller consent to freely speak to each other via recorded telephone(s) as is the normal practice in commodities, and securities markets.

16. Facsimile signatures shall be deemed originals for the purposes of this Agreement.

17. The provisions of this contract are binding upon one (1) Buyer, or multiple Buyers as identified in paragraph one (1) of this contract.


DANCY AUTO GROUP, LLC, AND JOHN CAREY

By:

Date:

Authorized Signatory – Dancy Auto Group, LLC, and John Carey


RENZER BELL

By:

Date: _March 25, 2014_

# EXHIBIT 15

From: "Jeff Bearden" <JeffBearden@JLRNashville.com>
Subject: **RE: Please Prepare The Paperwork For My Lessor As Follows**
Date: March 28, 2014 8:18:17 AM PDT
To: "Renzer Bell" <qirad@comcast.net>

Buyers order has been faxed to John Carey. The money wire has to be done by lessor, John Will need to send it,, not you. I will give him or you the wiring instructions. Sorry I am just now sending it to him.

Jeff Bearden
Sales Guide
Land Rover Nashville

Main: 615.986.6000
Direct: 615.277.5323

We post our inventory at www.LandRoverNashville.com and update it every day.  If you see something you like, let me know.

---

**From:** Renzer Bell [mailto:qirad@comcast.net]
**Sent:** Thursday, March 27, 2014 11:57 AM
**To:** Jeff Bearden
**Subject:** Re: Please Prepare The Paperwork For My Lessor As Follows

Did you send it to my lessor?

On Mar 27, 2014, at 9:18 AM, Jeff Bearden wrote:


OK I just sent a copy of buyers order from my phone.. I will scan and send you a better copy tomorrow.
Jeff Bearden
Sales Guide
Land Rover Nashville

Main: 615.986.6000
Direct: 615.277.5323

We post our inventory at www.LandRoverNashville.com and update it every day.  If you see something you like, let me know.

---

**From:** Renzer Bell [mailto:qirad@comcast.net]
**Sent:** Wednesday, March 26, 2014 2:12 PM
**To:** Jeff Bearden
**Subject:** Re: Please Prepare The Paperwork For My Lessor As Follows

Thank you sir, and my apologies for not getting that to you sooner. The markets have been quite exhausting lately.

On Mar 26, 2014, at 12:04 PM, Jeff Bearden wrote:

I have contacted John. We are finalizing the deal at this time . I will keep you posted.

Jeff Bearden
Sales Guide
Land Rover Nashville

Main: 615.986.6000
Direct: 615.277.5323

We post our inventory at www.LandRoverNashville.com and update it every day.  If you see something you like, let me know.

---

**From:** Renzer Bell [mailto:girad@comcast.net]
**Sent:** Wednesday, March 26, 2014 1:31 PM
**To:** Jeff Bearden
**Subject:** Please Prepare The Paperwork For My Lessor As Follows


84 Governors Way, Brentwood, Tennessee 37027

Good afternoon,

Metro-Gem Leasing & Funding Corp.
275 West Merrick Road
Valley Stream, New York 11580
Account Executive - John Carey, (914)309-0480(cell)

You may either email, or fax the relevant documents to me using (904)768-5016.

Thank you for your attention, and consideration.


Sincerely,

R Bell

# RETAIL BUYERS ORDER

Land Rover Nashville
P.O. Box - 427 Three Cadillac Drive
Brentwood, TN 37027
615-986-6000

**INVOICE NO**

**DATE** 03/26/2014

**SALESMAN** JOHN K BEARDEN

**BUS. PHONE**

**RES. PHONE**

PURCHASER MERTO-GEM LEASING & FUNDING CORP

ADDRESS 5 WIMDEMERE WAY  WOODBURY NY          ZIP 11797

| YEAR 2014 | MAKE LAND ROVER | MODEL RANGE ROVER SC | COLOR SANTORINI BLACK |
|---|---|---|---|
| ROOF | | TRIM IVORY/EBON | STRIPE |
| V.I.N. SALGV3TF5EA160855 | | STOCK NO. S150 | MILEAGE 20 |

| | |
|---|---|
| DEAL NUMBER: 100132 | 143635.00 |
| | 143635.00 |
| | 143635.00 |
| TOTAL PRICE | 143635.00 |
| BUS. TAX | 431.74 |
| SALES TAX | |
| RECORDING | 278.75 |
| LICENSE & TITLE | N/A |
| TOTAL PRICE | 144345.49 |
| DEPOSIT / REBATE | N/A |

| USED CAR ALLOWANCE | N/A | BAL. OWED | N/A | EQUITY | N/A |
|---|---|---|---|---|---|

BAL. OWED TO

| MAKE USED CAR | | TYPE | | YR. | |
|---|---|---|---|---|---|
| V.I.N. | | MILEAGE | | | |

| | |
|---|---|
| CASH ON DELIVERY | N/A |
| TOTAL DOWN PAYMENT | N/A |

| SPECIAL NOTES | BAL. DUE | 144345.49 |
|---|---|---|
| BAL. IN 1   MONTHS @ 144345.49   BEGINNING 05/10/14 | TOTAL | N/A |

| | |
|---|---|
| Bal Due | 144345.49 |
| Insurance $        Ded. | N/A |
| Life Insurance | N/A |
| A & H | N/A |
| Mech Break Down | N/A |
| Total | 144345.49 |
| Interest | N/A |
| GRAND TOTAL | 144345.49 |
| 144345.49 | 1 |
| TOTAL | 144345.49 |
| FINANCED BY | |
| APPROVED BY | |

I hereby request, direct and authorize you to bill and deliver to me the above described motor vehicle.

It is understood and agreed that no warranties of any kind or character express or implied are made by LAND ROVER NASHVILLE, its agents or employees or the manufacturer, on the vehicle or chassis described herein except that in the case of a new vehicle or chassis the printed Land Rover New Vehicle Warranty delivered to purchaser with such vehicle or chassis shall apply and the same is hereby applicable to such vehicle or chassis, and is expressly in lieu of all other warranties, expressed or implied including any implied warranty of merchantability or fitness for a particular purpose.

USED CAR WINDOW STICKER: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

I understand and agree that this instrument comprises the entire agreement pertaining to this purchase AND NO OTHER AGREEMENTS, VERBAL OR OTHERWISE IS UNDERSTOOD BY ME OR SHALL BE RECOGNIZED.

This order is not valid unless signed and accepted by an official of LAND ROVER NASHVILLE and approved by a responsible bank or finance company as to any deferred balance.

I certify that I am more than 18 years of age and I have read this entire agreement and by affixing my signature hereto fully understand and agree to the terms and conditions set forth herein.

In the event of a price increase by the manufacturer before delivery I agree to pay this increase.

PURCHASER MERTO-GEM LEASING & FUNDING CORP

ACCEPTED BY

**THIS IS NOT AN ORDER UNTIL ACCEPTED BY AN OFFICIAL OF THE COMPANY**

# EXHIBIT 16

# ASSIGNMENT OF CONTRACT OF SALE - MOTOR VEHICLE

1. For the consideration of **$4,580.00** plus other good and valuable consideration, **RENZER BELL** (the "Seller"), does hereby sell, assign and transfer to **DANCY AUTO GROUP, LLC, AND JOHN CAREY** (the "Buyer"), whose address is 760 Jericho Turnpike, Woodbury, New York 11797, its right to purchase the following described motor vehicle (the "Vehicle") :

Make: _____LAND ROVER_____
Model: ___RANGE LOVER AUTOBIOGRAPHY LWB ___
Year:                                      2014
VIN  [to be provided by the car dealer]

2. Buyer agrees to remit to Seller, or its agents or assigns, within seventy-two (72) hours of receipt by the Buyer, or its agents or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$4,580.00** plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of execution of this Agreement. Buyer agrees to remit within seventy-two (72) hours to the car dealer the equivalent of ten (10) percent of the purchase price of the Vehicle described in paragraph 1 upon car dealer's request for specification of the color, options and equipment of said Vehicle.

3. Buyer agrees and warrants that it and/or its agents or assigns will not under any circumstances contact or communicate with the car dealer of the Vehicle described in the above paragraph 1 unless Buyer receives specific written authorization from the Seller. Buyer further agrees and warrants that the terms and conditions of this agreement are confidential and that it will not, under any circumstances, disclose the terms and conditions of this agreement to any person and/or any entity unless Buyer receives specific written authorization from the Seller.

4. Buyer agrees to pay the sales price of MSRP + $55,500.00   to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point.

5. Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of MSRP + $55,500.00 plus any applicable luxury tax, registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2.

6. The Seller may within thirty (30) days of its tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in specification as the automobile specification in the instant transaction.

a)        The second automobile transaction shall be executed pursuant to the very same terms and conditions as the first transaction.
b)        The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's order/purchase agreement/bill of sale/contract** tendered by the Seller.
c)        The second automobile transaction does not require the signing of an additional contract by the Seller, or Buyer identified herein.

7. Buyer will not hold Seller liable for any damages or breach of this agreement if the car dealer is unwilling or unable to deliver the Vehicle referred to in paragraph 1, and/or if the car dealer breaches its agreement with the Seller, and/or for any acts of the car dealer and/or third parties.

a) In the event the Buyer does not comply with the terms and conditions set forth in the above paragraph 4, Buyer agrees and warrants that any and all sanctions and/or charges levied by the car dealer because of said noncompliance shall be borne by the Buyer.

8. The Vehicle is being transferred to Buyer on an "AS IS" basis, with no warranties, express or implied, by Seller, as to the condition of the Vehicle.

9. In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the Buyer is required to make a payment to the Seller of Seventy-Six Thousand, Eight Hundred Eighty-Eight Dollars as partial liquidated damages, to include but not limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned liquidated damages payment to the Seller does not represent a penalty.

10. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable.  If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

11. This Agreement shall be governed by and construed under the laws of the State of New York, except for its conflict of laws principles. Buyer consents and agrees that all legal proceedings, including but not limited to oral depositions, relating to the subject matter of this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and Buyer consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts.

12. This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written.

13. The undersigned parties acknowledge, accept and will unconditionally abide by all of the terms and conditions of this Agreement.

14. The Buyer unconditionally waives by signing this contract its right, if any, to contest the enforceability of the liquidated damages clause as an affirmative defense, or otherwise refuse to pay the agreed liquidated damages amount contained herein.

15. The Buyer, and Seller consent to freely speak to each other via recorded telephone(s) as is the normal practice in commodities, and securities markets.

16. Facsimile signatures shall be deemed originals for the purposes of this Agreement.

17. The provisions of this contract are binding upon one (1) Buyer, or multiple Buyers as identified in paragraph one (1) of this contract.

**DANCY AUTO GROUP, LLC, AND JOHN CAREY**

By:

Date:          Authorized Signatory – Dancy Auto Group, LLC, and John Carey

**RENZER BELL**

By:          _Renzer Bell II_

Date:          _March 26, 2014_

EXHIBIT 17

From:     <jcarey@dancyautomotive.com>
Subject:  **RE: Please Give Us An Update**
Date:     March 29, 2014 10:20:08 AM PDT
To:       "Renzer Bell" <qirad@comcast.net>
▶         1 Attachment, 9.6 KB



I got a packed showroom.  don't want to ignore you.  my guy telling me these rr autos are doing 40 over all over the country.  trying to back out.  I made some calls to other prospects.  their telling me the same thing 35-40 over. theres a saturation of RR right now.  retailing them 40-45 over.  short profits.  don't know why.  we going to have to revisit the pricing.  market dictating in the wrong direction.  ill call you when it calms down around here.

John Carey
Dancy Auto Group
760 Jericho Tpk.
Woodbury, N.Y. 11797
www.dpautomotivegroup.com
O: 516-864-0000
F: 516-864-0032
M: 914-309-0480

-------- Original Message --------
Subject: Please Give Us An Update
From: Renzer Bell <qirad@comcast.net>
Date: Sat, March 29, 2014 12:55 pm
To: John Carey <jcarey@dancyautomotive.com>

From: <jcarey@dancyautomotive.com>
Subject: **RE: Please Give Us An Update**
Date: March 29, 2014 11:23:00 AM PDT
To: "Renzer Bell" <qirad@comcast.net>
▶ 2 Attachments, 19.2 KB



no one is more confused than us.  our market is 170-175 we anticipated over 200.  I bought 5 at msrp plus tax and vig.  I'm maxed at 10G on top right now. didn't expect to see drop like this in a few days.  I cant buy 60 over to sit on car.  if you got buyers lined up send them my way.

John Carey
Dancy Auto Group
760 Jericho Tpk.
Woodbury, N.Y. 11797
www.dpautomotivegroup.com
O: 516-864-0000
F: 516-864-0032
M: 914-309-0480

-------- Original Message --------
Subject: Re: Please Give Us An Update
From: Renzer Bell <qirad@comcast.net>
Date: Sat, March 29, 2014 1:59 pm
To: <jcarey@dancyautomotive.com> <jcarey@dancyautomotive.com>

We still have clients who are willing to pay MSRP plus $60,000.00 so your message is a bit confusing.

On Mar 29, 2014, at 10:20 AM, <jcarey@dancyautomotive.com> <jcarey@dancyautomotive.com> wrote:



I got a packed showroom.  don't want to ignore you.  my guy telling me these rr autos are doing 40 over all over the country.  trying to back out.  I made some calls to other prospects.  their telling me the same thing 35-40 over.  theres a saturation of RR right now.  retailing them 40-45 over.  short profits.  don't know why.  we going to have to revisit the pricing.  market dictating in the wrong direction.  ill call you when it calms down around here.

John Carey
Dancy Auto Group
760 Jericho Tpk.
Woodbury, N.Y. 11797
www.dpautomotivegroup.com
O: 516-864-0000

EXHIBIT 18

March 31, 2014

John Carey
Manager
Dancy Auto Group, LLC
760 Jericho Turnpike
Woodbury, New York 11797

<u>Via Facsimile, and First Class Mail</u>

Dear Mr. Carey,

***Time is of the essence!***

On March 26, 2014 we tendered the consideration due pursuant to the contract we signed. Please find enclosed a copy of the buyer's order/purchase agreement/bill of sale/contract.

The subject Range Rover Autobiography Long Wheel Base should have been paid for on or before March 28, 2014.

We received an email from you that could be interpreted as your intention to renegotiate the contracts you signed. As we have stated to you, we have an alternate buyer that is prepared to pay the MSRP plus $60,000.00 that you agree to pay.

In light of the contradictory statements you have made since receiving the enclosed buyer's order/purchase agreement/bill of sale/contract, we hereby seek reasonable assurance of performance <u>in writing</u>.

Alternatively, if you have decided to breach/rescind/repudiate the contracts, state so <u>in writing</u> in order that we might move to mitigate our damages without fear of misapprehending your intentions.

***Time is of the essence!***

Thank you for your attention, and consideration.

Sincerely,

Renzer Bell
(904)768-7350
(904)766-7312

Encl.

# EXHIBIT 19

April 2, 2014

John Carey
Manager
Dancy Auto Group, LLC
760 Jericho Turnpike
Woodbury, New York 11797

Via Facsimile, and First Class Mail

Dear Mr. Carey,

You are hereby noticed that the undersigned has elected to
exercise its option pursuant to the contract dated March 25, 2014
to tender to you the buyer's order/purchase agreement/bill of
sale/contract for a second 2014 Range Rover Autobiography Long
Wheel Base.

The agreed price for the second 2014 Range Rover Autobiography
Long Wheel Base is MSRP plus $60,080.00.

The subject 2014 Range Rover Autobiography Long Wheel Base is
white exterior over London Tan interior.

Thank you for your attention, and consideration.

Sincerely,

Renzer Bell
(904) 766-7312
(904) 768-7350

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _Thompson_ ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

John Carey
Manager
Dancy Auto Group, LLC
760 Jericho Turnpike
Woodbury, New York 11797

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? ( *Extra Fee* )  ☐ Yes

2. Article Number
(Transfer from service label)    7006 3450 0001 4403 4188

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _Thompson_ ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

John Carey
Manager
Dancy Auto Group, LLC
760 Jericho Turnpike
Woodbury, New York 11797

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? ( *Extra Fee* )  ☐ Yes

2. Article Number
(Transfer from service label)    7006 3450 0001 4403 4171

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.49 | 0208 |
| Certified Fee | $3.30 | |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $6.49 | 04/02/2014 |

Sent To
John Carey, Dancy Auto Group LLC

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.49 | 0208 |
| Certified Fee | $3.30 | |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $6.49 | 04/02/2014 |

Sent To
John Carey, Manager, Dancy Auto
Street, Apt. No.;
or PO Box No. Jericho Turnpike

# FedEx

## Express

**earthsmart**

FedEx carbon-neutral
envelope shipping

Align top of FedEx Express® shipping label here.

ORIGIN ID:NIPA  (904) 766-7312
BELL RENZER

5736 CLEVELAND RD

JACKSONVILLE, FL 32209
UNITED STATES US

SHIP DATE: 28MAR18
ACTWGT: 0.60 LB
CAD: 006894328/SSFE1822

BILL CREDIT CARD

TO  DANIL P. MOYNIHAN COURT HOUSE
PRO SE INTAKE UNIT
500 PEARL ST
RM 200
NEW YORK NY 10007
(212) 806-0162          REF:

THU
PO:                        DEPT:



**FedEx**
Express

**E**

TRK#
0201  **7802 9383 1180**

**THU – 29 MAR 3:00P**
**STANDARD OVERNIGHT**

## XA PCTA

10007
NY–US  **EWR**



USM
SDNY

2018 MAR 29  AM 3:30