**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
RENZER BELL,                                          :
                                                     :
                        Plaintiff,                   :        18-CV-2846 (PAE) (OTW)
                                                     :
              -against-                              :        **OPINION & ORDER**
                                                     :
JOHN CAREY et al.,                                   :
                                                     :
                        Defendants.                  :
                                                     :
-----------------------------------------------------------x

       **ONA T. WANG**, **United States Magistrate Judge:**

I.     **Introduction**

        Plaintiff, proceeding *pro se*,[1] has moved for leave to amend his complaint. (ECF 55). The

proposed amended complaint (the "PAC") seeks to add:

        (1) a fifth and sixth cause of action for fraud in the inducement – alleging that
        Defendants[2] did not disclose:

                (a) a civil RICO action against two of the defendants, and

                (b) that defendants Dancy and Dancy Auto Group, LLC were delinquent in their
                taxes; and

        (2) defendants Richard Caplan and John and Jane Does 1-50.[3] (ECF 55 PAC ¶¶ 21, 167-
        210).

For the reasons discussed below, Plaintiff's request for leave to amend the complaint (ECF 55) is

**DENIED**.

---

[1] Mr. Bell is no stranger to litigation. He has brought several cases in this District (as well as cases in others). A
query on the Southern District of New York's CM/ECF returned over twenty cases brought by Mr. Bell.

[2] The Defendants are John Carey, Dancy Auto Group, LLC d/b/a Dancy Power Auto Group, Dancy Auto Group of
Great Neck, LLC, Great Neck Auto Sales, LLC, Macky Dancy Enterprises, LLC, Tyrone Hill, and Macky Dancy
(collectively, the "Defendants").

[3] John and Jane Does 1-50 are mentioned only in the case caption and not in the PAC itself.

II.    **Background and Procedural History**[4]

Plaintiff filed this action in March 2018, alleging breach of contract arising out of several 2014 purchase agreements with Defendants, who contracted to purchase Range Rovers from Plaintiff. (ECF 1). The parties executed three agreements in November 2013 and March 2014 for the purchase of two 2014 Range Rovers Autobiography Long Wheel Base. (ECF 1 ¶¶ 69, 70, 86-87, 102). Plaintiff alleges that the Defendants used Metro-Gem Leasing & Funding Corp. as their agent. (ECF 1 ¶ 96). Plaintiff alleges that despite the agreements and his timely intention to tender the vehicles, Defendants reneged on the agreements to purchase, and Plaintiff lost out on the consideration that would have been due to him. (ECF 1 ¶¶ 112-15). Plaintiff claims federal diversity jurisdiction. (ECF 1 ¶ 1). This action was referred to me for general pretrial supervision on April 6, 2019.[5]

Before filing the instant motion in November 2019, Plaintiff obtained Clerk's Certificates of Default in July 2019 against Defendants Tyrone Hill, Macky Dancy, John Carey, Macky Dancy Enterprises, LLC, Great Neck Auto Sale, LLC, Dancy Auto Group of Great Neck, LLC, and Dancy Auto Group, LLC. (ECF 42-48).

However, Plaintiff has yet to move for default. This Court first ordered that Plaintiff move for default by August 12, 2019. (ECF 49). In August 2019, this Court granted an extension to file the motion for default to October 3, 2019 and warned Plaintiff "that this case has been

---

[4] These facts are drawn from Plaintiff's Complaint. *See Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012).

[5] Courts in this circuit generally treat motions to amend as non-dispositive pre-trial motions. *See, e.g.*, *Kilcullen v. New York State Dep't of Transp.*, 55 F. App'x 583, 584-85 (2d Cir. 2003) (referring to motion to amend as a non-dispositive matter that may be referred to a magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)A)); *Marsh v. Sheriff of Cayuga Cty*, 36 F. App'x 10, 11 (2d Cir. 2002) ("[T]he magistrate judge acted within his authority in denying this motion to amend the complaint."); *Lyondell-Citgo Ref., L.P. v. Petroleos De Venezuela, S.A.*, No. 02-cv-795 (CBM), 2005 WL 883485, at *3 (S.D.N.Y. Apr. 14, 2005) (reviewing magistrate judge's decision on motion to amend under clearly erroneous standard).

moving at a sluggish pace, and failure to file a motion for default by October 3 may result in the Court recommending dismissal for failure to prosecute." (ECF 51). This Court granted a third additional extension to November 4, 2019 for the motion due to disruptions caused by Hurricane Dorian. (ECF 54). On November 20, 2019, this Court issued an order for Plaintiff to show cause "why he has failed to comply with the Court's order to file a motion for default judgment." (ECF 57). Plaintiff responded, arguing that he determined that amending the Complaint, by adding new claims, would be his best remedy. (ECF 58).

Now, having had the certificates of default against the Defendants for almost a year, Plaintiff moves to amend the complaint instead of filing for default, which, if granted, would delay any recovery of damages.

The fifth proposed cause of action alleges that Defendants Dancy and Hill fraudulently induced Plaintiff into entering the purchase agreements by not disclosing that there was a civil RICO lawsuit against Dancy and Hill in *Metro-Gem Leasing & Funding Corp. v. Dancy*, No. 16-cv-5245 (SJF) (AYS) (E.D.N.Y.). (ECF 55 PAC ¶ 120 ("[P]rior to the signing of the subject contracts is the existence of criminal RICO activity engaged in by equity owners/principals Macky Dancy, and Tyrone Hill which if disclosed would cause a reasonable business person to seek alternate business counterparts.")).

The sixth proposed cause of action, also for fraudulent inducement, alleges that Dancy and Dancy Auto Group owed over $8 million in delinquent taxes, and whose tax liabilities also were not disclosed to Plaintiff. (ECF 55 PAC ¶¶ 118-19 ("[T]he collective tax liabilities of defendants Macky Dancy, and Dancy Auto Group, LLC represent material facts that a

reasonable business person would consider in determining whether Macky Dancy, and Dancy Auto Group, LLC are suitable business counterparts.").

For both the fifth and sixth proposed causes of action, Plaintiff claims that Defendants had a duty to disclose both the lawsuit and tax liabilities but did not do so, "in order to induce the Plaintiff to enter into the subject contracts, and to induce reliance on the defendants' fidelity, and intent to proceed to contract in good faith by the Plaintiff." (ECF 55 PAC ¶ 125). Plaintiff alleges he "reasonably relied upon the defendants' presentation of themselves as competent businessmen" and suffered damage as a result. (ECF 55 PAC ¶¶ 126-133).

Plaintiff also seeks to add fifty-one new defendants: (1) Richard Caplan, who is purportedly a member of Macky Dancy Enterprises, LLC, Dancy Auto Group, LLC, Great Neck Auto Sales, LLC, and Dancy Auto Group of Great Neck, LLC, and (2-51) John and Jane Does 1-50. (ECF 55 PAC ¶ 21 and case caption). Plaintiff does not specify who John and Jane Does 1-50 are, nor does Plaintiff allege any facts against them.

## III.   Discussion

### A.   Legal Standard

Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Applying that standard, the Second Circuit "has held that a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 603 (2d Cir. 2005) (per curiam) (internal quotation marks omitted). The party opposing a motion to amend bears the burden of establishing that amendment would be futile.

4

*See, e.g.*, *Ouedraogo v. A-1 Int'l Courier Serv., Inc.,* No. 12-CV-5651 (AJN), 2013 WL 3466810, at

*6 (S.D.N.Y. July 8, 2013). An amendment is not "futile" if it could withstand a motion to dismiss

under Rule 12(b)(6). *See, e.g., Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 185 (2d

Cir. 2012). Put differently, a proposed claim is futile if, accepting the facts alleged by the party

seeking amendment as true and construing them in the light most favorable to that party, it

does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679

(2009).

Courts are "ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v.*

*Freshwater*, 623 F.3d 90, 92, 101 (2d Cir. 2010) (holding that a general withdrawal of the special

status is "inappropriate absent a showing that the particular litigant has acquired the

experience necessary to deal generally with all aspects of his case.").

**B.  Analysis**

**i.   The claims against John and Jane Does 1-50 are futile**

As a preliminary matter, the addition of defendants John and Jane Does 1-50 should be

denied with prejudice. There are no claims or facts pleaded against these fifty individuals, and

their names are only added to the case caption. *See Ho Myung Moolsan Co., Ltd. v. Manitou*

*Mineral Water, Inc.*, 665 F. Supp. 2d 239, 251 (S.D.N.Y. 2009) ("When a complaint names

defendants in the caption but makes no substantive allegations against them in the body of the

pleading, the complaint does not state a claim against these defendants."). This dismissal is

with prejudice because further amendments are untimely and without good cause. *See Holmes*,

568 F.3d at 334-35 (requiring good cause for amendment once the time for amendments has

passed). The action has been pending since March 2018, and Plaintiff has had certificates of

defaults against the existing defendants since July 2019. Plaintiff has not shown good cause to add unspecified causes of action against fifty unnamed and unmentioned defendants.

ii.    **The claims against Richard Caplan are futile (and untimely)**

The addition of Richard Caplan as a defendant is futile.[6] Plaintiff added Caplan because he is purportedly an equity owner in the four limited liability company ("LLC") defendants – Macky Dancy Enterprises, LLC, Dancy Auto Group, LLC, Great Neck Auto Sales, LLC, and Dancy Auto Group of Great Neck, LLC (collectively, the "LLCs"). (ECF 55 PAC ¶¶ 16, 21). Under New York law, a member of an LLC is generally not liable on behalf of the LLC, unless Plaintiff can pierce the corporate veil. *See Bd. of Managers of Beacon Tower Condo. v. 85 Adams St., LLC*, 136 A.D.3d 680, 681 (2d Dep't 2016) ("[A] member of a limited liability company will not be held liable for the liabilities of the company solely by reason of being a member of the company or acting in such capacity or participating in the conduct of the business of the company."). In order to reach a member of the LLC, a Plaintiff must allege facts that show "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 769 (S.D.N.Y. 2018) (internal quotation marks omitted) (citing New York veil piercing law). "Proving these elements has been characterized as a 'heavy burden.'" *Id.*

---

[6] The proposed addition of Caplan also fails because the amendment is untimely. When Plaintiff first filed the Complaint over two years ago, he included Dancy, Hill, and Carey, purported members of the same LLCs as Caplan. (ECF 1 ¶ 21). Plaintiff's affidavit in support of the motion to amend the complaint does not explain why he did not or could have not added Caplan before the time to amend as of right had expired. (ECF 55). Plaintiff also does not specify if there are additional LLC members yet to be disclosed that he may seek to add. Plaintiff is on the eve of obtaining a default against named Defendants and, upon an inquest, recovering damages. Plaintiff should not delay his own recovery.

(quoting *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 338 (1998)); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512-13 (S.D.N.Y. 2005) ("[T]he Second Circuit has stated that veil piercing is a narrow exception to the doctrine of limited liability for corporate entities, and that courts should permit veil-piercing only under *'extraordinary circumstances.'*" (citing *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (emphasis added)). A plaintiff seeking to pierce the corporate veil "must come forward with factual allegations as to both elements" and "allegations concerning the fraud or wrongful act element are subject to the heightened pleading standards of Rule 9(b) to the extent that they allege fraud." *Raffington*, 285 F. Supp. 3d at 769 (citing *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 197 (E.D.N.Y. 2009)). Rule 8 governs allegations concerning the domination element. *Id.* Even under the lenient Rule 8(a) pleading requirements, however, veil-piercing allegations cannot be conclusory. *See EED Holdings*, 228 F.R.D. at 512 (citing *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003)).

Assuming all allegations in the light most favorable to the Plaintiff, Caplan's ownership stake in the LLCs, alone, is insufficient to confer liability. *See Bd. of Managers of Beacon Tower Condo.*, 136 A.D.3d at 682-83 (declining to hold the LLC member liable on behalf of the LLC). Plaintiff does not allege an independent cause of action in tort against Caplan much less any allegations that Caplan was personally involved in the underlying events. Accordingly, the only way Caplan can be held liable is if Plaintiff alleges facts meriting a piercing of the corporate veil.

Plaintiff has not alleged any facts that Caplan's alleged dominion caused the Defendants to renege on the purchase agreements or make allegedly fraudulent statements. *See Raffington*, 285 F. Supp. 3d at 769. Paragraphs 30-53 of the PAC are the purported veil-piercing

allegations, but they are conclusory and do not contain any factual allegations specific to Caplan.[7] *See, e.g.*, ¶ 37 ("That upon information, and belief, the 'LLC Equity Defendants' exercised complete control, and dominion over the 'LLC Defendants.'); ¶ 42 ("That upon information, and belief, the 'LLC Equity Defendants' utilized the 'LLC Defendants' as artifices to defraud, and willfully, and maliciously caused economic injury to Metro-Gem Leasing & Funding Corp., and other trade counterparts."). Courts have declined to pierce the corporate veil for similarly conclusory allegations. *See, e.g.*, *id.* at 770 (denying leave to amend because of failure to plead dominion by conclusory allegations that there was "significant control"); *EED Holdings*, 228 F.R.D. at 512-13.

Plaintiff's allegations, even assuming all inferences in the *pro se* Plaintiff's favor, fall short of those in cases in which Courts have allowed veil piercing. *See, e.g.*, *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 378 (S.D.N.Y. 2003) (holding that plaintiff had alleged a basis for piercing the corporate veil where the complaint alleged that two defendants "exercised . . . complete domination to abuse the corporate form in a manner that resulted in injury to the plaintiff, namely by using assets for personal rather than corporate purposes and by placing assets beyond the reach of creditors"); *Dist. Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 241-42 (S.D.N.Y. 2003) (holding that the plaintiff had stated claim of piercing the corporate veil where it "allege[d] that [defendant] ha[d] used his companies in an attempt to avoid the obligations that were imposed by [certain] arbitration awards"); *Picard v. Magnify (In re Bernard L. Madoff Investment Sec.*

---

[7] Plaintiff names Caplan with regard to veil-piercing allegations in the "Affidavit in Support of Motion to Amend the Complaint," but these allegations are similarly conclusory and not properly included in the proposed amended complaint. (*See* ECF 55).

*LLC)*, 583 B.R. 829, 848-49 (Bankr. S.D.N.Y. 2018) (holding that veil-piercing was warranted when specific factual allegations showed, *inter alia*, that principal transferred corporate funds to himself, company was undercapitalized and had no employees or officers, and principal held himself out as owner to induce banks to extend credit).

### iii.   The fraud in the inducement claims are futile

#### a.   Fraud in the inducement must be distinct from breach of contract

The proposed amendments for fraud in the inducement, which require pleading with particularity per Rule 9(b), are governed by New York law. A fraud claim is not viable "where a party is merely seeking to enforce its bargain." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995); *see also Wall v. CSX Transp. Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). "Claims for fraud in the inducement and breach of contract are duplicative when the fraud claim 'is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement.'" *Alpha Cap. Anstalt v. Oxysure Systems, Inc.*, 252 F. Supp. 3d 332, 339 (S.D.N.Y. 2017) (quoting *Vorcom Internet Servs., Inc. v. L&H ᴇɴɢ'g & Design LLC*, No. 12-cv-2049 (VB), 2013 WL 335717, at *4 (S.D.N.Y. Jan. 9, 1996)).

Here, Plaintiff asks for the same remedy as the breach of contract claim – monetary relief.[8] (Ex. 55 ¶ 188 ("Plaintiff seeks equitable relief in the form of punitive damages of

---

[8] Because an award of legal damages would make Plaintiff whole, there is no need to "invoke the equitable powers of the Court and rescind the contract." *C3 Media & Marketing Grp, LLC v. Firstgate Interest, Inc.*, 419 F. Supp. 2d 419, 436 (S.D.N.Y. 2005) (dismissing claim for rescission). Rescission would put the parties in the same position as if they had never entered the contract. *See Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 292 (S.D.N.Y. 2019) (denying claim for rescission as preempted by the breach of contract claim). Here, putting the parties back in the same position before the contract was signed would mean that Plaintiff would keep the Range Rovers, and Defendants would not pay Plaintiff for the cars, which is the same status of the parties at this time, at the time

$60,080.00 applicable to the Second Agreement); ¶ 210 ("Plaintiff seeks equitable relief in the form of punitive damages of $60,080.00 applicable to the Third Agreement)). Because Plaintiff seeks monetary damages for the fraudulent inducement (for which he would not be entitled), those claims must be dismissed as duplicative of the breach of contract claim. *See Ambac Assurance Corp. v. Countrywide Home Loans Inc.*, 179 A.D.3d 518, 519 (1st Dep't 2020) ("[A] fraudulent inducement claim can be dismissed as duplicative of a breach of contract claim if it seeks the same damages." (internal quotations omitted)); *Donnefeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 221 (E.D.N.Y. 2018) (dismissing claim for fraudulent inducement as duplicative of breach of contract claim).

### b.    Plaintiff has not pleaded the substantive elements of a fraudulent inducement claim

"[T]o make out a claim for fraudulent inducement that is sufficiently distinct from a breach of contract claim, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Alpha Capital Anstalt*, 252 F. Supp. 3d at 339. "If a plaintiff is proceeding under a material omission theory, it must further allege that the 'defendant had a duty to disclose material information.'" *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014) (quoting *Nealy v. U.S.*

---

when Plaintiff obtained his certificates of default last year, and at the time this lawsuit was filed more than two years ago.

*Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008)). There is a duty to disclose in the following instances:

> (1) the parties are in a fiduciary relationship; (2) under the special facts doctrine, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge; or (3) where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure.

*Aetna*, 404 F.3d at 582 (citations and internal quotations marks omitted).

### c.    The claim for non-disclosure of the *Metro-Gem* action fails because *Metro-Gem* was filed two years after the contracts were signed

The Defendants' alleged conduct of not disclosing the civil RICO action, *Metro-Gem*, could not possibly give rise to a claim for fraudulent inducement. *Metro-Gem* was filed on September 16, 2016, two years *after* the purchase agreements were signed in 2014. *See Metro-Gem*, ECF 1 (E.D.N.Y.); ECF 55 PAC Exs. 14 and 15.[9] For reasons that hardly need to be said, the Court need not analyze the substantive pleading standards for fraud for an impossible misrepresentation.

### d.    The claim for non-disclosure of tax liabilities fails

Plaintiff's claim of fraudulent inducement for failing to disclose tax liabilities fails to state a claim.

#### 1.    Plaintiff does not plead with particularity the tax liabilities

This claim should fail because Plaintiff does not specify in the PAC what these tax liabilities are and when they arose. *See* Fed. R. Civ. P. 9(b) (requiring pleading with

---

[9] Judge Feuerstein ultimately dismissed the civil RICO claims against the non-defaulting *Metro-Gem* defendants. *See Metro-Gem*, ECF 50 (E.D.N.Y. June 19, 2017).

particularity). Because Plaintiff attached an Exhibit A to the motion for leave to amend, which is a document from the New York State Department of Taxation and Finance showing the purported tax liabilities, the Court will examine this document as if the *pro se* Plaintiff properly included those allegations in the PAC. Exhibit A shows five tax liabilities purportedly of Macky Dancy, personally, showing docketed dates of March 30, 2017, March 8, 2016, April 21, 2014, October 7, 2013, and December 5, 2011, and two purportedly of Dancy Auto Group, LLC with docketed dates of May 11, 2017 and March 30, 2017.

       2.      *Most of the tax liabilities arose <u>after</u> the agreements*

For the same reason of impossibility as with the lawsuit disclosure claim, Defendants could not have disclosed in March 2014 tax liabilities that did not arise until a later date. Only two liabilities predate the agreements: Macky Dancy's October 7, 2013 and December 5, 2011 tax liabilities for the amounts of $944.87 and $20,188.02, respectively.

       3.      *The tax liabilities are not material and there was no duty to disclose*

The claim also fails because Plaintiff does not allege these two tax liabilities, totaling just over $21,000, were material.[10] Moreover, because Plaintiff is proceeding under a material

---

[10] The Court doubts that even if Plaintiff alleged materiality, $21,000 in tax liabilities would be material in a deal involving multiple Range Rovers that retailed for about $145,000 *each*. (*See* ECF 55 PAC ¶ 88). "An omission of fact is material if 'a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction,' or 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable [person] would not so regard it.'" *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 667, at 672 (S.D.N.Y. 2009) (quoting *Chase Manhattan Bank v. Motorola, Inc.*, 184 F. Supp. 2d 384, 394 (S.D.N.Y. 2002)).

omission theory, he must allege the information is material and that Dancy had a duty to disclose the information (the tax liabilities).[11]

Even assuming that Plaintiff alleged these two liabilities were material (which he has not done) and the liabilities were, in fact, material, the claim fails because there is no duty to disclose these liabilities. In short, Plaintiff failed to plead: (1) a fiduciary relationship, (2) special facts, or (3) partial or ambiguous statements – apply here. *See First Hill Partners*, 52 F. Supp. 3d at 637; *Aetna*, 404 F.3d at 582.

There is no fiduciary relationship between Plaintiff and Dancy because, as Plaintiff alleges in the complaint and PAC, all parties are merchants and actively engaged in trading valuable commodities (*e.g.*, ECF 55 PAC ¶ 3 ("Plaintiff was and is a merchant as defined in the Uniform Commercial Code section 2-104; and actively engaged in the business of purchasing and trading a variety of valuable commodities")) and "where parties deal at arms-length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances."[12] *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991), *aff'd sub nom.*, *Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992); *see also Saul v. Cahan*, 153 A.D.3d 947, 949 (2d Dep't 2017) ("[A fiduciary relationship] is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." (quoting *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19 (2005)). Accordingly, because the parties were

---

[11] At best, this claim could only be asserted against Dancy, who had the tax liabilities in his individual capacity, and not all the Defendants. (*See* ECF 55 at 7). Further, Dancy was not a party to the contracts at issue.

[12] The parties had previously successfully transacted the sale of a Range Rover before the agreements in question. (ECF 55 PAC ¶ 55). Plaintiff further alleged that Dancy "was and is a merchant as defined in the Uniform Commercial Code, section 2-104, and actively engaged as President, or Principal in the business of, inter alia, selling high-end luxury automobiles." (ECF 55 PAC ¶ 4).

counterparts in a commercial, arms-length transaction, Dancy did not owe fiduciary duties to Plaintiff.

There are also no special facts alleged that suggest Dancy had superior knowledge, not readily available to Plaintiff, or knew that Plaintiff was acting on the basis of mistaken knowledge that Dancy had no tax liabilities if such tax liabilities were, in fact, material. *See Aetna*, 404 F.3d at 582 (finding that a duty to disclose can arise when there are "special facts"). These tax liabilities are publicly available, and Plaintiff could have investigated if Dancy had tax liabilities. New York law is clear that "a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 195 (1st Dep't 2012) (internal quotation marks omitted). Further, parties to a transaction have "a duty to exercise ordinary diligence and conduct an independent appraisal of the risk they [are] assuming." *Id.* (internal quotations omitted). Plaintiff has shown he was able to conduct diligence into the Defendants in 2019 (as shown by attaching Dancy's publicly available tax liabilities (ECF 55 Ex. A)) and, thus, could have conducted the same investigation into Dancy at the time he entered into the agreements.

4. *There was no partial or ambiguous statement that necessitated further disclosure*

Finally, Plaintiff has not alleged any facts suggesting that Dancy made "a partial or ambiguous statement" about Dancy's tax liabilities that necessitated further disclosure. *See Aetna*, 404 F.3d at 582 (holding that a duty to disclose can arise when a party has made a partial or ambiguous statement).

IV.    <u>**Conclusion**</u>

Accordingly, Plaintiff's motion for leave to amend the complaint (ECF 55) is denied with prejudice because the proposed amendments would be futile. **Plaintiff is directed to file a motion for default judgment by July 31, 2020**. Failure to timely file may result in a recommendation of dismissal for failure to prosecute.

Chambers will mail a copy of this Order and the unpublished cases cited therein to the *pro se* Plaintiff.

The Clerk of Court is directed to close ECF 55.

**SO ORDERED.**


_s/ Ona T. Wang_

Dated: July 1, 2020                                    **Ona T. Wang**
      New York, New York                       United States Magistrate Judge